**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FILED-USBC, FLS-MIA '26 AUG 19 PM1:50

In re: JESDIT DIAZ, Debtor.

MARCIA T. DUNN, Trustee in Bankruptcy for JESDIT DIAZ, Plaintiff,

v.

JESDIT DIAZ, Defendant.

Bankruptcy Case No. 26-11729-PDR | Chapter 7
Adversary Proceeding No. 26-01235-PDR

**DEFENDANT'S MOTION TO ACCEPT ANSWER OUT OF TIME, TO SET ASIDE ANY CLERK'S DEFAULT IF ENTERED, FOR ADDITIONAL TIME TO OBTAIN COUNSEL, AND ANSWER TO COMPLAINT**

I, Jesdit Diaz, am representing myself. I respectfully ask the Court to accept the Answer included below, to set aside any Clerk's Default that may have been entered against me, and to allow me additional time through September 15, 2026, or such additional time as the Court considers reasonable, to retain bankruptcy litigation counsel and, if necessary, amend my Answer through counsel.

**1.** I did not intentionally ignore this adversary proceeding. I am not an attorney, I have had difficulty understanding the bankruptcy litigation process, and I have been actively trying to obtain counsel.

**2.** The summons states that a response to the Complaint is required and warns that a default judgment may be entered if no response is filed. I am now submitting my substantive Answer so that the case may be decided on the facts rather than by default.

**3.** My failure to respond sooner was not an attempt to delay the case or avoid the Court. I have been trying to understand the proceedings and obtain legal representation.

**4.** I have substantive defenses to the Trustee's allegations. I strongly deny that I acted with fraudulent intent, intentionally concealed assets, intentionally withheld records, or willfully refused to obey the Court.

**5.** I have communicated with Trustee's counsel and provided documents and explanations available to me. My June 18 and June 25, 2026 communications are relevant to my efforts to respond and cooperate.

6. My efforts to obtain counsel continued after those communications. Attorney Timothy Kingcade was one of the attorneys I was seeking to retain. On or about July 20, 2026, Mr. Kingcade communicated with Mr. Bakst on my behalf in an effort to discuss a possible settlement. I have the email communications documenting this.

7. On August 7, 2026, Mr. Kingcade communicated to me that Mr. Bakst had rejected a proposed $20,000 settlement and wanted more money, but the amount being requested was not disclosed to me. I have the email documenting that communication.

8. On August 10, 2026, Mr. Kingcade advised me that he would not take my case. I have the email documenting that decision. I then had to continue looking for another attorney while the adversary proceeding was already pending.

9. I include these facts because they show that I was actively seeking legal representation and attempting, through an attorney, to address and potentially resolve the Trustee's claims. I was not ignoring the case or intentionally delaying the proceedings.

10. Accepting my Answer will allow the Court to decide the serious discharge allegations on their merits. I respectfully ask that any procedural default not prevent me from presenting my defenses.

11. I also respectfully request additional time to obtain qualified bankruptcy litigation counsel. The scheduling conference is presently set for September 15, 2026. I ask for time through that date, or such additional period as the Court deems appropriate, to retain counsel and allow counsel to review the pleadings and records.

12. I am filing this request in good faith and not for purposes of delay.

**REQUEST FOR RELIEF ON MOTION**

I respectfully request that the Court: (a) accept my Answer below as filed; (b) set aside any Clerk's Default that has been entered against me, if applicable; (c) deny or defer any request for default judgment so this case may be heard on the merits; (d) allow me through September 15, 2026, or such additional time as the Court considers reasonable, to obtain counsel and seek leave to amend if necessary; and (e) grant any other relief the Court considers just.

**DEFENDANT JESDIT DIAZ'S ANSWER TO TRUSTEE'S COMPLAINT**

I, Jesdit Diaz, am representing myself. I submit this Answer in my own words and based on my personal knowledge and the records available to me. I strongly deny that I acted with the intent to defraud anyone, hide assets, intentionally withhold records, or intentionally disobey the Court. Where I admit a transaction occurred, I am admitting only that the transaction occurred as shown by the records; I am not admitting the Trustee's characterization of my intent or the legal conclusion that my discharge should be denied.

1. Admitted only that the Trustee filed this adversary proceeding objecting to my discharge. I deny that my discharge should be denied.

2. Admitted that Marcia T. Dunn is the Chapter 7 Trustee. I make no admission beyond that fact.

3. Admitted that I filed my Chapter 7 case on February 12, 2026 and that the Trustee was appointed.

4. I do not have enough legal knowledge to admit or deny the legal deadline stated in this paragraph. I therefore deny it to the extent a response is required.

5. I do not dispute that this Court has jurisdiction over this adversary proceeding.

6. I do not dispute that this is a core proceeding concerning my discharge. I deny any legal conclusion that the Trustee is entitled to deny my discharge.

7. Admitted that I was the owner/officer/operator of HealthMed Clinical Center Inc. HealthMed Clinical Center Inc. is now closed and no longer operating.

8. I do not dispute venue.

9. Admitted that my Wells Fargo Way2Save savings account ending in 1133 was not listed on my Schedule A/B. I strongly deny that I intentionally omitted the account to hide it or conceal money. I rarely used that savings account and did not regularly use it as a personal spending account. I did not understand that it had to be separately disclosed in the bankruptcy schedules. I did not decide to file bankruptcy until February 2026, when I spoke with Arturo Alfonso about filing. I relied on bankruptcy counsel to guide me regarding the documents and disclosures required.

10. Admitted that the savings account existed before the bankruptcy filing and was linked to my checking account. I deny that this establishes any intent to conceal the account. My significant use of the account in January 2026 was connected to HealthMed's business funds and obligations.

11. Admitted that I appeared for the Rule 2004 examination.

12. Admitted that approximately $211,851.17 was transferred from HealthMed Clinical Center Inc.'s business checking account into the Way2Save savings account. I strongly deny that I made this transfer in anticipation of bankruptcy or to hide money. I had not decided to file bankruptcy at that time. The money originated in HealthMed's business account. HealthMed had automatic business-financing withdrawals, including daily and/or weekly payments, and I moved the funds so business money would remain available for HealthMed's obligations, including the amount owed to Wellness ARE USA Inc.

13. Admitted that I signed bankruptcy schedules and a Statement of Financial Affairs under penalty of perjury. I deny that I knowingly or fraudulently provided false information.

14. Admitted that approximately $180,010 was withdrawn from the savings account in connection with obtaining a cashier's check. I deny any fraudulent purpose.

15. Admitted that the savings account existed before the bankruptcy filing and had been linked to my checking account. I deny any allegation or inference that I used the account to conceal money.

16. Admitted that a cashier's check for approximately $180,000 was issued payable to Wellness ARE USA Inc. Wellness provided wound-care products/patches to HealthMed for HealthMed's wound-care services. The payment was made for HealthMed's business obligation to Wellness, not as a gift or an attempt to hide money.

17. Admitted that I explained at the examination that the Wellness payment was made by cashier's check after I was unable to wire the funds.

18. Admitted that HealthMed received a $25,000 payment from PPD Investigator Payments and that approximately $38,400 was transferred to the savings account on February 11, 2026. I deny that the transfer was made with fraudulent intent.

19. Admitted that funds moved among the savings account, my checking account, and HealthMed's business account after the petition date. I deny that those transactions, simply because they occurred, establish concealment or fraudulent intent. The complete bank records should be reviewed transaction by transaction.

20. Admitted that Trustee's counsel requested documents and information after the examination.

21. Denied. I did not intentionally refuse to cooperate. My communications with Mr. Michael Bakst show that I communicated about the Trustee's requests and later sent documents and communications available to me. I deny that I knowingly refused to cooperate.

22. Admitted that the Trustee filed a Motion to Compel seeking $22,688.07 and specified documents. I deny any allegation that my inability to provide the money was an intentional attempt to disobey the Court.

23. Admitted that a hearing was scheduled for June 10, 2026 and that the Court entered a Turnover Order. I deny that I intentionally failed to appear. I mistakenly went to the wrong courthouse. I then went to the correct courthouse and arrived at approximately 10:40 a.m., after my matter had already been heard. I spoke with court staff and thereafter contacted Mr. Bakst.

24. Admitted that after the Turnover Order I contacted Trustee's counsel. On June 18, 2026, I emailed Mr. Bakst and explained that I was without effective counsel, that I did not understand the turnover demand, that I was trying to retain another attorney, and that I needed clarification and additional time. Mr. Bakst responded regarding the June 23 deadline and the documents requested.

25. Admitted that on June 25, 2026 I sent Mr. Bakst documents and communications available to me. My email identified invoices and a contract, explained that there was no written contract with Dr. Nayvis Iglesias, and provided communications with Dayami Hernandez/Dayami Rodriguez. I openly told Mr. Bakst that I did not have the money demanded and asked whether Chapter 13 could allow repayment over time. I deny intentionally withholding existing documents or intentionally refusing to cooperate.

26. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count I except for the specific transactions I expressly admit occurred.

27. This paragraph states a legal standard. I am not an attorney and do not admit that the legal standard is satisfied in my case.

28. I admit the identified transactions occurred to the extent shown by the bank records. I deny that they were transfers or concealments made with intent to hinder, delay, or defraud creditors or the Trustee.

29. Denied. I strongly deny actual intent to hinder, delay, or defraud creditors or the Trustee. I did not know in November 2025 that I would file bankruptcy and had not decided to file bankruptcy when the January 2026 transactions occurred. I decided to pursue bankruptcy in February 2026 after speaking with Arturo Alfonso. The January transfers were connected to HealthMed's business cash flow, automatic financing withdrawals, and business obligations, including Wellness ARE USA, not a plan to hide assets for bankruptcy.

30. Denied. I deny that my discharge should be denied under Count I.

31. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count II except for transactions expressly admitted.

32. This paragraph states a legal standard concerning post-petition property. I do not admit that the legal standard for denial of discharge is satisfied.

33. Denied. I deny that after filing bankruptcy I acted with intent to hinder, delay, or defraud creditors or the Trustee.

34. I admit that transactions occurred after the petition date, but deny that I transferred, removed, or concealed property with fraudulent intent. The transactions should be reviewed individually using the bank records and supporting documents.

35. I admit that a $10,095 transaction involving Carlos Perez appears in the records to the extent accurately stated. I deny that I concealed funds or made the transaction with intent to defraud. I also deny intentionally concealing the $22,688.07.

36. Denied. I did not intentionally conceal estate property or information. I provided records and explanations available to me and continued communicating with Trustee's counsel.

37. Denied. I deny that I acted with intent to hinder, delay, or defraud creditors or the Trustee.

38. Denied. I deny that my discharge should be denied under Count II.

39. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count III except for facts expressly admitted.

40. This paragraph states a legal standard regarding financial records. I do not admit that the standard for denial of discharge is satisfied.

41. Denied. I did not conceal, destroy, mutilate, or falsify records in order to prevent anyone from understanding my finances or HealthMed's business transactions.

42. Denied. I did not intentionally fail to keep or preserve records for the purpose of concealing my financial condition. I produced documents available to me. If a requested document did not exist or was not in my possession or control, that was not an intentional effort to hide information.

43. Denied. I deny that my discharge should be denied under Count III.

44. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count IV except for facts expressly admitted.

45. This paragraph states a legal standard regarding a knowingly and fraudulently made false oath. I deny that I knowingly or fraudulently made a false oath.

46. Denied. I strongly deny knowingly or fraudulently making false statements or omissions. I admit the savings account was not listed and that the transactions occurred to the extent shown by the records. The omission of the savings account was not intentional or fraudulent. I rarely used the account, did not understand that it had to be separately disclosed, and relied on bankruptcy counsel to guide me concerning the schedules and disclosures. I deny intentionally hiding HealthMed income, receivables, contracts, relationships, or transactions.

47. Admitted that I certified my schedules and Statement of Financial Affairs under penalty of perjury. I deny that I knowingly certified information I believed was false.

48. Denied. I deny that I knowingly made numerous material false statements or omissions.

49. This paragraph states a legal conclusion. To the extent a response is required, denied.

50. Denied. I deny that my discharge should be denied under Count IV.

51. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count V except for facts expressly admitted.

52. This paragraph states a legal standard concerning withholding recorded information. I deny knowingly or fraudulently withholding recorded information from the Trustee.

53. Denied. I did not knowingly, intentionally, or fraudulently withhold records. The written communications with Mr. Bakst show that I communicated and sent materials available to me. On June

25 I sent invoices, a contract, and communications and explained when a requested written contract did not exist. Mr. Bakst later responded to what I had provided while continuing to dispute the financial issues. I deny intentionally concealing or destroying records.

54. Denied. I deny that my discharge should be denied under Count V.

55. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count VI except for facts expressly admitted.

56. This paragraph states a legal standard concerning explanation of loss or deficiency of assets. I deny that I should lose my discharge under that standard.

57. Denied. I have explanations for the major transactions identified by the Trustee and I am providing or gathering supporting bank records, vendor documentation, business-expense records, legal-fee records, and communications. The $180,000 Wellness payment was for HealthMed's business obligation. I deny that I intentionally failed to explain the disposition of assets.

58. Denied. I deny that my discharge should be denied under Count VI.

59. I incorporate my responses to paragraphs 1 through 25. I deny the allegations of Count VII except for facts expressly admitted.

60. This paragraph states a legal standard concerning refusal to obey a Court order. I deny that I willfully refused to obey a lawful order of the Court.

61. Admitted that the Trustee filed the Motion to Compel described in the Complaint.

62. Admitted that the June 10 hearing occurred and that the Court entered the Turnover Order. I deny intentionally failing to appear. I went to the wrong courthouse by mistake and arrived at the correct courthouse after the matter had been heard.

63. Admitted that the Turnover Order required turnover of $22,688.07 and specified documents.

64. Denied that I willfully or intentionally refused to obey the Turnover Order. I did not have the $22,688.07 available when it was demanded. I communicated that fact to Mr. Bakst. I also sent documents and communications available to me on June 25, 2026 and explained what did not exist. My inability to produce money I no longer had was not an intentional decision to defy the Court. I deny deliberately withholding records or deliberately spending money for the purpose of violating the Turnover Order.

65. Denied. I deny that my discharge should be denied under Count VII.

ADDITIONAL FACTUAL STATEMENT

I ask the Court to consider my complete communications with Trustee's counsel because they show that I was not hiding from the Trustee or simply refusing to respond.

On June 18, 2026, I contacted Michael R. Bakst and explained that I was without effective counsel, did not understand the Turnover Order, was trying to obtain another attorney, and needed clarification and additional time.

On June 25, 2026, I sent Mr. Bakst the documents and communications I had available, including materials concerning Wellness ARE USA, and explained what requested documents did not exist. I also told him directly that I did not have the money demanded. I did not pretend I had the money or refuse to discuss the issue.

Mr. Bakst later responded to the materials I provided and continued to dispute the use and disposition of the funds. I ask the Court to consider the actual emails and attachments rather than characterize my conduct as a complete refusal to cooperate.

The bank records also show that the $211,851.17 came from HealthMed Clinical Center Inc.'s business checking account into the Way2Save account. HealthMed's January business statement shows a $212,415.63 health-care claim payment and business-financing debits. The records also show transfers from my savings account back into HealthMed's business checking. I ask that the complete flow of funds be considered.

I am not claiming that every transaction was a business expense. Some money was used for HealthMed's bills and obligations, legal fees, and some personal expenses. I am not trying to hide that. I am willing to account for the transactions using the records I have.

I did not decide to file bankruptcy in November 2025 or when the January 2026 transfers occurred. I decided to pursue bankruptcy in February 2026 after speaking with Arturo Alfonso. I therefore deny that the January transfers were part of a plan to conceal assets in anticipation of bankruptcy.

HealthMed Clinical Center Inc. is now closed and no longer operating.

DEFENSES AND RESERVATION OF RIGHTS

I deny the essential allegations of fraudulent intent, knowing concealment, knowing withholding of records, and willful refusal to obey the Court.

I ask that the source, purpose, and disposition of the funds be determined from the complete bank records and supporting business documents.

I ask that my written communications and document production to Trustee's counsel be considered when determining whether I intentionally refused to cooperate or withheld information.

I am currently pro se and respectfully request the opportunity, if permitted by the Court, to amend or correct this Answer after I obtain qualified bankruptcy litigation counsel and complete my review of the records.

REQUEST FOR RELIEF

WHEREFORE, I respectfully ask the Court to deny the Trustee's request to deny my discharge, allow this matter to be decided on the complete facts and evidence, permit me to present my records and communications, and grant any other relief the Court considers fair and appropriate.

**<u>EXHIBITS SUBMITTED WITH THIS FILING</u>**

Exhibit A – June 18, 2026 email exchange with Michael R. Bakst concerning the Turnover Order, request for clarification/additional time, and efforts to obtain counsel.

Exhibit B – June 25, 2026 email to Michael R. Bakst transmitting documents/communications and explaining what records existed.

Exhibit C – Any follow-up email from Michael R. Bakst acknowledging

Exhibit D –Wells Fargo records showing the $211,851.17 transfer originated from HealthMed Clinical Center Inc.'s business checking account and the corresponding transfer into the Way2Save account. Attach only the pages needed to show the transactions.

Exhibit E – Wellness ARE USA Inc. invoice.

Exhibit F – July 20, 2026 email communication showing attorney Timothy Kingcade communicating with Michael R. Bakst on my behalf concerning possible settlement.

Exhibit G – August 7, 2026 email from Timothy Kingcade concerning the settlement discussions, including the communication that the $20,000 proposal was rejected and that more money was being sought.

Exhibit H – August 10, 2026 email from Timothy Kingcade advising that he would not take/continue with my case, supporting my explanation that I again had to seek replacement counsel.

**IMPORTANT PRIVACY NOTE:** Before filing exhibits, redact full account numbers, Social Security numbers, dates of birth, and other protected personal identifiers. Leave only the last four digits of financial account numbers where necessary.

Respectfully submitted,

Jesdit Diaz, Pro Se Defendant
23812 SW 117 Place
Homestead, FL 33032
Telephone: 786-614-2231
Email: jesdit18@gmail.com

## CERTIFICATE OF SERVICE

I certify that on 18th of August, 2026, I served a true and correct copy of this Motion, Answer, and exhibits on Michael R. Bakst, Esq., counsel for the Trustee, at 4420 Beacon Circle, West Palm Beach, FL 33407

Jesdit Diaz

Gmail

Jesdit Diaz <jesdit18@gmail.com>

**Jesdit Diaz 26-11729 PDR**

**Jesdit Diaz** <jesdit18@gmail.com> Thu, Jun 18, 2026 at 6:16 PM
To: MBakst@lippes.com

Good Afternoon Mr. Bakst:

Hope this email finds you well. I am the debtor in bankruptcy case 26-11729 PDR. I had Arturo Alfonso as my attorney but he left me and I am in the dark. I tried getting another attorney but that one also left me hanging at this last hearing and I arrived to court late. Today I went to a third attorney and she gave me an Order Granting Trustee's Motion to Compel Turnover of Property of the Estate from the Debtor which I had never seen before. Can you please add me to the service list so that I can comply with all court notices and hearings in the future?

Also, I am not a lawyer, so I don't understand this stuff too well. I need your help please. Can you please provide a breakdown of the $22,000 that I have to pay? I understand that you may have explained it to my previous attorney Arturo but I am in the dark. Is it possible that you fill me in as to what you and Arturo were agreeing to do?

I am trying to retain new counsel. Can you please give me an extension so that I can comply with this court order?

Thank you very much,
Jesdit Diaz

Gmail Jesdit Diaz <jesdit18@gmail.com>

## Jesdit Diaz 26-11729 PDR

**Michael R. Bakst** <MBakst@lippes.com> Thu, Jun 18, 2026 at 6:37 PM
To: Jesdit Diaz <jesdit18@gmail.com>
Cc: Marcia Dunn <marcia.dunn@dunnlawpa.com>, Alexandra Castro <acastro@dunnlawpa.com>, Sonia Lebron <slebron@dunnlawpa.com>, "Melissa A. Bird" <mbird@lippes.com>

Ms. Diaz,

Attache is the Court order. It was served on you, as was the motion and notice of hearing. If you have changed your address, you will need to file a notice of change of address with the Court.

This is the amount of money that you had on the date of the bankruptcy filing which is property of the estate. Simply put, it is not your money. You have been ordered to return this money to the estate. There are serious consequences associated with spending estate funds. I seriously do recommend that you hire an attorney.

The Truste will hold off on further proceedings if these funds are turned over by June 23, 2026. You are also required to turnover various documents.

**Michael R. Bakst**
Partner

LippesMathias LLP
ATTORNEYS AT LAW

4420 Beacon Circle
West Palm Beach, Florida 33407

ph: 561.842.3000 ext. 1577 | fx: 561.842.3626
MBakst@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

[Quoted text hidden]
[Quoted text hidden]

**Diaz, Jesdit Order Granting Turnover.pdf**
180K

Gmail Jesdit Diaz <jesdit18@gmail.com>

## Jesdit Diaz 26-11729 PDR

**Jesdit Diaz** <jesdit18@gmail.com> Thu, Jun 25, 2026 at 9:52 PM
To: "Michael R. Bakst" <MBakst@lippes.com>
Cc: Marcia Dunn <marcia.dunn@dunnlawpa.com>, Alexandra Castro <acastro@dunnlawpa.com>, Sonia Lebron <slebron@dunnlawpa.com>, "Melissa A. Bird" <mbird@lippes.com>

Good evening Mr. Bakst:

Attached are the invoices and contract that you requested from me. For Doctor Iglesias I don't have a contract. We never did a contract. As to the screenshots of text message conversations I have attached all of my conversations with Dayami, however I named only two screenschots that are the only ones that talk about money. We spoke about money verbally not by text messages.

In terms of the $21,000 that I owe the Court I don't have the money and nobody I know has the money to lend it to me. Is there any way that we can turn this Chapter 7 into a Chapter 13 so that I can pay off the $21,000 over time. Would you have an objection?

I have also seen several attorneys and they don't want to take my case because there is an adversary proceeding. Tomorrow I will try again trying to find another attorney who has the knowledge and is willing to take my case. I thank you for your time.
[Quoted text hidden]

**20 attachments**



**Dayami Screenshot.PNG**
387K



**Dayami Screenshot 2.PNG**
612K



**IMG_7582.PNG**
659K



**IMG_7584.PNG**
401K



**IMG_7586.PNG**
783K



**IMG_7583.PNG**
804K



**IMG_7585.PNG**
843K



**IMG_7587.PNG**
818K



**IMG_7590.PNG**
690K



**IMG_7589.PNG**
990K



**IMG_7591.PNG**
617K



**IMG_7592.PNG**
664K



**IMG_7593.PNG**
709K



**IMG_7588.PNG**
2451K



**IMG_7594.PNG**
769K



**IMG_7595.PNG**
736K



**IMG_7597.PNG**
347K



**IMG_7596.PNG**
710K

**Invoices Wellness Are USA.pdf**
266K

**Independent Contractor Agreement.pdf**
3185K

Gmail

Jesdit Diaz <jesdit18@gmail.com>

# Jesdit Diaz 26-11729 PDR

**Michael R. Bakst** <MBakst@lippes.com> Tue, Jun 30, 2026 at 5:01 PM
To: Jesdit Diaz <jesdit18@gmail.com>
Cc: "marcia.dunn" <marcia.dunn@dunnlawpa.com>, acastro <acastro@dunnlawpa.com>, slebron <slebron@dunnlawpa.com>, "Melissa A. Bird" <mbird@lippes.com>

Ms. Diaz,

While we appreciate what you have sent, it is just not acceptable that you have spent the funds in your bank account after the date of the bankruptcy filing. I also do not believe that conversion to Chapter 13 would be in good faith under these circumstances. Your Schedules I and J report negative $13.00 a month. You have no way to fund a Chapter 13 plan.

There is not only the approximate $22,000.00 that you have spent – and still failed to account for since you transferred it to your business account – there is the $180,000.00 you transferred and there is an $11,000.00 preferential transfer.

**Michael R. Bakst**
Partner

LippesMathias LLP
ATTORNEYS AT LAW

4420 Beacon Circle
West Palm Beach, Florida 33407

ph: 561.842.3000 ext. 1577 | fx: 561.842.3626
MBakst@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**From:** Jesdit Diaz <jesdit18@gmail.com>
**Sent:** Thursday, June 25, 2026 9:53 PM
**To:** Michael R. Bakst <MBakst@lippes.com>
**Cc:** marcia.dunn <marcia.dunn@dunnlawpa.com>; acastro <acastro@dunnlawpa.com>; slebron <slebron@dunnlawpa.com>; Melissa A. Bird <mbird@lippes.com>
**Subject:** Re: Jesdit Diaz 26-11729 PDR

Good evening Mr. Bakst:

Attached are the invoices and contract that you requested from me. For Doctor Iglesias I don't have a contract. We never did a contract. As to the screenshots of text message conversations I have attached all of my conversations with Dayami, however I named only two screenschots that are the only ones that talk about money. We spoke about money verbally not by text messages.

In terms of the $21,000 that I owe the Court I don't have the money and nobody I know has the money to lend it to me. Is there any way that we can turn this Chapter 7 into a Chapter 13 so that I can pay off the $21,000 over time. Would you have an objection?

I have also seen several attorneys and they don't want to take my case because there is an adversary proceeding. Tomorrow I will try again trying to find another attorney who has the knowledge and is willing to take my case. I thank you for your time.

On Thu, Jun 18, 2026 at 6:38 PM Michael R. Bakst <MBakst@lippes.com> wrote:

> Ms. Diaz,
>
> Attache is the Court order. It was served on you, as was the motion and notice of hearing. If you have changed your address, you will need to file a notice of change of address with the Court.
>
> This is the amount of money that you had on the date of the bankruptcy filing which is property of the estate. Simply put, it is not your money. You have been ordered to return this money to the estate. There are serious consequences associated with spending estate funds. I seriously do recommend that you hire an attorney.
>
> The Truste will hold off on further proceedings if these funds are turned over by June 23, 2026. You are also required to turnover various documents.
>
> **Michael R. Bakst**
>
> Partner
>
> LippesMathias LLP
> ATTORNEYS AT LAW
>
> 4420 Beacon Circle
>
> West Palm Beach, Florida 33407
>
> ph: 561.842.3000 ext. 1577 | fx: 561.842.3626

MBakst@lippes.com | lippes.com

LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

**From:** Jesdit Diaz <jesdit18@gmail.com>
**Sent:** Thursday, June 18, 2026 6:16 PM
**To:** Michael R. Bakst <MBakst@lippes.com>
**Subject:** Jesdit Diaz 26-11729 PDR

Good Afternoon Mr. Bakst:

Hope this email finds you well. I am the debtor in bankruptcy case 26-11729 PDR. I had Arturo Alfonso as my attorney but he left me and I am in the dark. I tried getting another attorney but that one also left me hanging at this last hearing and I arrived to court late. Today I went to a third attorney and she gave me an Order Granting Trustee's Motion to Compel Turnover of Property of the Estate from the Debtor which I had never seen before. Can you please add me to the service list so that I can comply with all court notices and hearings in the future?

Also, I am not a lawyer, so I don't understand this stuff too well. I need your help please. Can you please provide a breakdown of the $22,000 that I have to pay? I understand that you may have explained it to my previous attorney Arturo but I am in the dark. Is it possible that you fill me in as to what you and Arturo were agreeing to do?

I am trying to retain new counsel. Can you please give me an extension so that I can comply with this court order?

Thank you very much,

Jesdit Diaz

---

**Diaz - DE1 Petition and Schedules (003).pdf**
1819K

HEALTHMED CLINICAL CENTER INC.

# Independent Contractor Agreement

This Independent Contractor Agreement ("Agreement') is entered into as of 07/31/2024 by and between **HealthMed Clinical Center Inc.** ("Company"), with a principal place of business **3971 SW 8th ST, Suite 209 Coral Gables Fl, 33134** and, individual or corporation ("*Contractor*").

1. **Services**

a. **Nature of Services**: *Contractor* will perform **Medical Director** services (hereinafter the "Services"), as more particularly described on Exhibit A of this Agreement, for Company as an independent contractor. The Services have been specially ordered and commissioned by *Company*. To the extent the Services include materials subject to copyright, *Contractor* agrees that the Services are done as "work made for hire" as that term is defined under U.S. copyright law, and that as a result, *Company* will own all copyrights in the Services. *Contractor* will perform such services in a diligent and workmanlike manner and in accordance with the schedule, if any, set forth on Exhibit A. The content, style, form and format of any work product of the Services shall be completely satisfactory to *Company* and shall be consistent with *Company's* standards. Except as specified on Exhibit A, *Company* agrees that *Contractor's* services need not be rendered at any specific location and may be rendered at any location selected by the *Company's* clients to whom services shall be rendered by *Contractor* on behalf of the company. *Contractor* hereby grants *Company* the right, but not the obligation, to use and to license others the right to use *Contractor's* name, voice, signature, photograph, likeness and biographical information in connection with and related to the *Services*.

b. **Relationship of the Parties and Independent Contractor Status**: *Contractor* enters into this Agreement as, and shall continue to be, an independent contractor. It is the express intention of the parties that *Contractor* is an independent contractor. Nothing in this Agreement shall in any way be construed to indicate that *Contractor* is an employee of the *Company*. *Contractor* will be expected and required to use his/her background, training, and skills to carry out his duties. All Services shall be performed only by *Contractor*. Under no circumstances shall *Contractor*, look to *Company* as his/her employer, or as a partner, agent or principal. Neither *Contractor*, shall be entitled to any benefits accorded to *Company's* employees, including without limitation worker's compensation, disability insurance, vacation or sick pay. *Contractor* shall be responsible for providing, at *Contractor's* expense, and in *Contractor's* name, unemployment, disability, worker's compensation as well as licenses and permits usual or necessary for conducting the *Services*.

c. **Insurance:** The *Company shall* maintain comprehensive professional and general liability insurance at levels required by law, but not less than $1 million per occurrence and $3 million in the aggregate, that will cover *Contractor* for services rendered on behalf of the *Company*.

HEALTHMED CLINICAL CENTER INC.

*Contractor* understands that practice of his/her duties outside the *Company's* and beyond the scope of this agreement is not covered, in any way, by the *Company* professional and general liability insurance.

d. **Compensation and Reimbursement:** As sole consideration for the *Services* provided hereunder, *Contractor* shall be compensated and reimbursed for the services provided under this Agreement. *Company* shall pay *Contractor* the amount of **$ 1,500** (dollars) per **month** which shall be due and payable to *Contractor* on a monthly basis. Completeness of work product shall be determined by *Company* in its sole discretion, and *Contractor* agrees to make all revisions, additions, deletions or alterations as requested by *Company*. No other fees and/or expenses will be paid to *Contractor*, unless such fees and/or expenses have been approved in advance by the appropriate *Company* executive in writing. *Contractor* shall be solely responsible for any and all taxes, Social Security contributions or payments, disability insurance, unemployment taxes, and other payroll type taxes applicable to such compensation. *Contractor* hereby indemnifies and holds *Company* harmless from, any claims, losses, costs, fees, liabilities, damages or injuries suffered by *Company* arising out of *Contractor's* failure with respect to its obligations in this Section.

e. **Withholding:** Other Benefits. Compensation paid pursuant to this Agreement shall not subject to the customary withholding of income taxes and other employment taxes. *Contractor* shall be solely responsible for reporting and paying any such taxes. The Company shall not provide *Contractor* with any coverage or participation in the *Company's* accident and health insurance, life insurance, disability income insurance, medical expense reimbursement, wage continuation plans, or other fringe benefits provided to regular employees.

f. **Expenses:** *Company* shall not reimburse *Contractor* unless written previous authorization of any reasonable and necessary expenses incurred by *Contractor* in connection with the performance of his duties hereunder, provided, the President or Managing Director of the *Company* has approved such expenses in advance.

g. **Vehicles and Equipment:** *Contractor* will furnish all vehicles, equipment (including laptop computers, cell phones, etc.), and materials used to provide the services required by this Agreement. *Company* will not require *Contractor* to rent or purchase any equipment, product, or service as a condition of entering into this Agreement.

h. **Personnel:** *Contractor* represents and warrants to *Company* that under this Agreement and while performing Services hereunder will agree and comply with (a) Federal, State and local laws that regulate the provision of Services, in addition to all required certification criteria, training and sufficient expertise to accomplish the Services; and (b) executed agreements which state that (i) all work done by the Contractor will be a work made for hire, as that term is defined under U.S. copyright law, and will owned by *Contractor*, and (ii) the *Contractor* assigns all rights in and to all work done by the *Contractor*.

2. **Protection of Company's Confidential Information**

HEALTHMED CLINICAL CENTER INC.

a. **Confidential Information:** *Company* now owns and will hereafter develop, compile and own certain proprietary techniques, trade secrets, and confidential information which have great value in its business (collectively, "Company Information"). *Company* will be disclosing *Company* Information to *Contractor* during *Contractors* performance of the Services. *Company* Information includes not only information disclosed by Company, but also information developed or learned by *Contractor* during *Contractor's* performance of the Services. *Company* Information is to be broadly defined and includes all information which has or could have commercial value or other utility in the business in which *Company* is engaged or contemplates engaging or the unauthorized disclosure of which could be detrimental to the interests of *Company*, whether or not such information is identified by *Company.* By way of example and without limitation, *Company* Information includes any and all information concerning discoveries, developments, designs, improvements, inventions, formulas, software programs, processes, techniques, know-how, data, research techniques, customer and supplier lists, marketing, sales or other financial or business information, scripts, and all derivatives, improvements and enhancements to any of the above. *Company* Information also includes like third- party information which is in *Company's* possession under an obligation of confidential treatment.

b. **Protection of Company Information**: *Contractor* agrees that at all times during or subsequent to the performance of the Services, *Contractor* will keep confidential and not divulge, communicate, or use *Company* Information, except for *Contractor's* own use during the Term of this Agreement to the extent necessary to perform the Services. *Contractor* further agrees not to cause the transmission, removal or transport of tangible embodiments of, or electronic files containing, *Company* Information from *Company's* principal place of business, without prior written approval of *Company.*

c. **Exceptions:** *Contractor's* obligations with respect to any portion of the *Company* Information as set forth above shall not apply when *Contractor* can document that (i) it was in the public domain at the time it was communicated to *Contractor* by *Company*; (ii) it entered the public domain subsequent to the time it was communicated to *Contractor* by *Company* through no fault of *Contractor;* (iii) it was in *Contractor's* possession free of any obligation of confidence at the time it was communicated to *Contractor* by *Company*; or (iv) it was rightfully communicated to *Contractor* free of any obligation of confidence subsequent to the time it was communicated to *Contractor* by *Company.*

d. **Return of Documents:** *Contractor* acknowledges and agrees that all originals and copies of records, reports, documents, lists, plans, memoranda, notes and other documentation related to the business of the *Company* or containing any Confidential Information shall be the sole and exclusive property of the *Company* and shall be returned to the *Company* upon the termination of this Agreement or upon the written request of the *Company.*

e. **Company Property:** All materials, including without limitation documents, drawings, drafts, notes, designs, computer media, electronic files and lists, including all additions to, deletions

HEALTHMED CLINICAL CENTER INC.

from, alterations of, and revisions in the foregoing (together the "Materials"), which are furnished to *Contractor* by *Company* or which are developed in the process of performing the Services, or embody or relate to the Services, the *Company* Information or the Innovations (as defined below), are the property of *Company*, and shall be returned by Contractor to Company promptly at *Company's* request together with any copies thereof, and in any event promptly upon expiration or termination of this Agreement for any reason. *Contractor* is granted no rights in or to such Materials, the *Company* Information or the Innovations, except as necessary to fulfill its obligations under this Agreement. *Contractor* shall not use or disclose the Materials, *Company* Information or Innovations to any third party.

f. **Injunction:** *Contractor* agrees that it would be difficult to measure damage to the *Company* from any breach by *Contractor* of Section 2.a 2. b, 2.c, and/or 2.d and that monetary damages would be an inadequate remedy for such breach. Accordingly, *Contractor* agrees that if *Contractor* shall breach Section 2.a or 2.b, the *Company* shall be entitled to, in addition to all other remedies it may have at law or equity, to an injunction or other appropriate orders to restrain any such breach, without showing or proving actual damages sustained by the *Company*.

g. **r-.to Release:** *Contractor* agrees that the termination of this Agreement shall not release *Contractor* from any obligations under Section 2.a 2. b, 2.c, and/or 2.d.

3. **Prior Knowledge and Relationships**

a. **Prior Inventions and Innovations.** *Contractor* shall disclose, if any, a complete list of all inventions or innovations made by *Contractor* prior to commencement of the Services for *Company* and which *Contractor* desires to exclude from the application of this Agreement. *Contractor* will disclose to *Company* such additional information as *Company* may request regarding such inventions or innovations to enable *Company* to assess their extent and significance. *Company* agrees to receive and hold all such disclosures in confidence.

b. **Non-Compete and Non-Solicitation:** *Contractor* agrees that during the term of this Agreement and for one (1) year after the termination date, *Contractor* will not, without the *Company's* express written consent: (i) directly or indirectly, for himself or on behalf of any other person, corporation, or entity, seek to employ, solicit, encourage, or attempt to induce to leave, any (A) current employee or consultant of *Company*, or (B) any person who, at any time during the three months prior to the termination date, was an employee or consultant of Company, (ii) solicit the business of any then current (at the time of the termination date) clients or customers (including parties which *Company* is engaged in business discussions) of *Company* relating, directly or indirectly, to the business of the company or competitive with the business of the *Company*, other than on behalf of *Company*, within a sixty (60) mile radius of any Company location where *Contractor* actually performed services for *Company*, (iii) directly or indirectly acquire or hold any ownership or investment interest in or contract to provide administrative or executive services to any person or entity providing the same or similar services as *Company* or (iv) otherwise compete with *Company* directly or in conjunction with any other person or entity.

HEALTHMED CLINICAL CENTER INC.

c. **Other Commitments:** Except as disclosed on this Agreement, *Contractor* has no other agreements, relationships or commitments to any other person or entity which conflict with *Contractor's* obligations to *Company* under this Agreement. *Contractor* agrees not to enter into any agreement, either written or oral, in conflict with this Agreement.

4. **Assignment of Contractor's Inventions and Copyrights**

a. **Disclosure:** *Contractor* will promptly disclose in writing to *Company* all works, products, discoveries, developments, designs, innovations, improvements, inventions, formulas, processes, techniques, know-how and data (whether or not patentable, and whether or not at a commercial stage, or registrable under copyright or similar statutes) which are authored, made, conceived, reduced to practice or learned by *Contractor* (either alone or jointly with others) during the period *Contractor* provides the Services as a result of performing the Services including any concepts, ideas, suggestions and approaches related thereto or contained therein (collectively, the "Innovations").

b. **Assignment**: *Contractor* hereby assigns and agrees to assign to *Company*, without royalty or any other consideration except as expressly set forth herein, all worldwide right, title and interest *Contractor* may have or acquire in and to (i) all Materials; (ii) all Innovations (iii) all worldwide patents, patent applications, copyrights, mask work rights, trade secrets rights and other intellectual property rights in any Innovations; and (iv) any and all "moral rights" or right of "droit moral" (collectively "Moral Rights"), that *Contractor* may have in or with respect to any Innovations. To the extent any Moral Rights are not assignable, *Contractor* waives, disclaims and agrees that *Contractor* will not enforce such Moral Rights. *Contractor* agrees that such assignment shall extend to all languages and including the right to make translations of the Materials and Innovations. Additionally, *Contractor* agrees, at no charge to *Company*, but at *Company's* sole expense, to sign and deliver to *Company* (either during or subsequent to *Contractor's* performance of the Services) such documents as *Company* considers desirable to evidence the assignment of all rights of *Contractor*, if any, described above to *Company* and *Company's* ownership of such rights and to do any lawful act and to sign and deliver to *Company* any document necessary to apply for, register, prosecute or enforce any patent, copyright or other right or protection relating to any Innovations in any country of the world.

c. **Power of Attorney:** *Contractor* hereby irrevocably designates and appoints each of *Company* and its Secretary as *Contractor's* agent and attorney-in-fact, to act for and in *Contractor's* behalf and stead, for the limited purpose of executing and filing any such document and doing all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights or other protections which employ or are based on Innovations with the same force and effect as if executed and delivered by *Contractor*.

d. **Representations and Warranties:** *Contractor* represents and warrants to *Company* that (a) *Contractor* has full power and authority to enter into this Agreement including all rights necessary to make the foregoing assignments to *Company*; that in performing under the Agreement, (b) *Contractor* will not violate the terms of any agreement with any third party; and (c) the Services and any work product thereof are the original work of *Contractor*, do not and will

not infringe upon, violate or misappropriate any patent, copyright, trade secret, trademark, contract, or any other publicity right, privacy right, or proprietary right of any third party. *Contractor* shall defend, indemnify and hold *Company* and its successors, assigns and licensees harmless from any and all claims, actions and proceedings, and the resulting losses, damages, costs and expenses (including reasonable attorneys' fees) arising from any claim, action or proceeding based upon or in any way related to *Contractor's*, or employees, breach or alleged breach of any representation, warranty or covenant in this Agreement, and/or from the acts or omissions of *Contractor* or *Contractor's* employees.

5. **Termination of Agreement**

a. **Term:** This Agreement shall be effective from the date first listed above for the period of One Calendar year, or until completion of the Services, as applicable, unless sooner terminated by either party in accordance with the terms and conditions of this Agreement ("Term"). This Agreement is terminable by the *Company* immediately, at will, and in the sole discretion of the President of the *Company*. *Contractor* may terminate this Agreement upon fifteen (15 days written notice to the *Company*. This Agreement also may be terminated at any time upon the mutual written agreement of the *Company* and *Contractor*. If *Company* exercises its right to terminate the Agreement, any obligation it may otherwise have under this Agreement shall cease immediately, except that *Company* shall be obligated to compensate *Contractor* for work performed up to the time of termination. If *Contractor* exercises its right to terminate the Agreement, any obligation it may otherwise have under this Agreement shall cease immediately. Additionally, this Agreement shall automatically terminate upon *Contractor's* death. In such event, *Company* shall be obligated to pay *Contractor's* estate or beneficiaries only the accrued but unpaid compensation and expenses due as of the date of death.

b. **Continuing Obligations of Contractor:** The provisions of Sections 1.a (as relates to creation and ownership of copyright), 1.b, 1.c, 2, 3, 4, 5.b, and 6 shall survive expiration or termination of this Agreement for any reason.

6. **Additional Provisions**

a. **Compliance with Policies:** *Contractor* shall comply with *Company's* corporate compliance plan, and all service standards, clinical protocols, policies and procedures developed and implemented by the Company, as the same may be modified from time to time.

b. **Medical Records:** *Contractor* shall, in accordance with *Company* policies, cause to be promptly prepared records for all procedures and services performed and shall maintain an accurate and complete file within *Company* of all such reports and supporting documents. The records so maintained shall be sufficient to enable *Company* to obtain payment for the services rendered, to facilitate the delivery of quality care, and to comply with the requirements of all licensing and accrediting agencies. *Contractor's* duties shall include responsibility for preparing and attending to, in connection with such services, all documentation and reports. All records shall be completed consistent with accepted standards of business practice

HEALTHMED CLINICAL CENTER INC.

c. **Governing Law and Attorney's Fees**: This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its choice of law principles. The parties' consent to exclusive jurisdiction and venue in the federal and state courts sitting in Broward County, Florida. In any action or suit to enforce any right or remedy under this Agreement or to interpret any provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and other expenses.

d. **Binding Effect:** This Agreement shall be binding upon, and inure to the benefit of, the successors, executors, heirs, representatives, administrators and permitted assigns of the parties hereto. *Contractor* shall have no right to assign this Agreement, by operation of law or otherwise; or subcontract or otherwise delegate the performance of the Services without *Company's* prior written consent which may be withheld as *Company* determines in its sole discretion. Any such purported assignment shall be void.

e. **Severability:** If any provision of this Agreement shall be found invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to reasonably effect the intent of the parties.

f. **Entire Agreement:** This Agreement constitutes the entire understanding and agreement of the parties with respect to its subject matter and supersedes all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between the parties.

g. **Assignment or Subcontracting:** *Contractor* shall not assign this Agreement nor his interest therein without the prior written consent of *Company*. *Contractor* is prohibited from subcontracting for any portion of the Services without prior written approval of *Company*.

h. **Injunctive Relief:** *Contractor* acknowledges and agrees that in the event of a breach or threatened breach of this Agreement by *Contractor*, *Company* will suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement.

i. **Contractor's Remedy.** *Contractor's* remedy, if any, for any breach of this Agreement shall be solely in damages and *Contractor* shall look solely to *Company* for recover of such damages. *Contractor* waives and relinquishes any right *Contractor* may otherwise have to obtain injunctive or equitable relief against any third party with respect to any dispute arising under this Agreement. *Contractor* shall look solely to *Company* for any compensation which may be due to *Contractor* hereunder.

j. **Agency**: *Contractor* is not *Company's* agent or representative and has no authority to bind or commit *Company* to any agreements or other obligations.

k. **Amendment and Waivers:** Any term or provision of this Agreement may be amended, and the observance of any term of this Agreement may be waived, only by a Writing signed by the party to be bound. The waiver by a party of any breach or default in performance shall not be deemed to constitute a waiver of any other or succeeding breach or default. The failure of any party to

HEALTHMED CLINICAL CENTER INC.

enforce any of the provisions hereof shall not be construed to be a waiver of the right of such party thereafter to enforce such provisions.

l. **Time**: *Contactor* agrees that time is of the essence in this Agreement.

m. **Scheduled Absences:** *Contractor* shall provide reasonable advance notice to *Company* of vacation or other scheduled absent time that prevents him or her from fulfilling his/her duties pursuant to this Agreement. *Contractor* shall communicate directly with the *Company* in order to establish coverage for Services during absences.

n. **Notices:** Any notice, demand, or request with respect to this Agreement shall be in writing and shall be effective only if it is delivered by personal service, by air courier with receipt of delivery, or mailed, certified mail, return receipt requested, postage prepaid, to the address set forth above. Such communications shall be effective when they are received by the addressee; but if sent by certified mail in the manner set forth above, they shall be effective five (5) days after being deposited in the mail. Any party may change its address for such communications by giving notice to the other party in conformity with this section.

This Agreement constitutes the entire agreement between the parties pertaining to its subject matter and it supersedes all prior contemporaneous agreements, representations and understandings of the parties. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all parties.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed by themselves or their duly authorized officer as of the day, month and year first above written

**CAUTION: THIS AGREEMENT AFFECTS YOUR RIGHTS TO INNOVATIONS YOU MAKE PERFORMING YOUR SERVICES AND RESTRICTS YOUR RIGHT TO DISCLOSE OR USE COMPANY'S CONFIDENTIAL INFORMATION DURING OR SUBSEQUENT TO YOUR SERVICES.**

**CONTRACTOR HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS.**

| | |
|---|---|
| **Contractor:** | **Company:** |
| Carlos Perez | Jesdit Diaz |
| **Contractor's Name** | **Company's Representative Name** |
| [signature] | [signature] |
| **Contractor's Signature** | **Company's Representative Signature** |

INVOICE

WELLNESS ARE USA
INCORPORATED

From: WELLNESS ARE USA
6801 NW 77th Avenue, Suite 107 Miami, FL 33166

Bill To: HEALTHMED CLINICAL CENTER INC
3971 SW 8th Street, Suite 209, Coral Gables, FL 33134

| | |
|---|---|
| Invoice No. | INV-001 |
| Check No. | 818293816 |
| Check Date | 01/02/2026 |

| Patient Name | DOS | Paid Amount |
|---|---|---|
| MENDEZ, JOHN | 12/6/2024 | $55,372.13 |
| MENDEZ, JOHN | 12/7/2024 | $9,340.65 |
| MESA, GILBERTO | 12/6/2024 | $55,372.13 |
| REYES, JUANA | 12/6/2024 | $55,372.13 |
| REYES, JUANA | 12/20/2024 | $36,958.59 |
| TOTAL | | $212,415.63 |

# INVOICE

From: WELLNESS ARE USA
6801 NW 77th Avenue, Suite 107 Miami, FL 33166

Bill To: HEALTHMED CLINICAL CENTER INC
3971 SW 8th Street, Suite 209, Coral Gables, FL 33134

| | |
|---|---|
| Invoice No. | INV-002 |
| Check No. | 818304726 |
| Check Date | 01/05/2026 |

| Patient Name | DOS | Paid Amount |
|---|---|---|
| MENDEZ, JOHN | 12/20/2024 | $9,343.81 |

TOTAL $9,343.81

**PAYMENT SUMMARY**

| | |
|---|---|
| Total Invoiced | $221,759.44 |
| Payment Received #1 | $180,010.00 01/16/2026 |
| Payment Received #2 | $10,000.00 02/17/2025 |
| Remaining Balance | $31,749.44 |

# Initiate Business Checking SM



HEALTHMED CLINICAL CENTER INC
3971 SW 8TH ST STE 209
CORAL GABLES FL 33134-2950

**Questions?**

*Available by phone Mon-Sat 7:00am-11:00pm Eastern Time, Sun 9:00am-10:00pm Eastern Time:*
We accept all relay calls, including 711

**1-800-CALL-WELLS** (1-800-225-5935)

*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

**Other Wells Fargo Benefits**

**Two trending crypto scams to watch out for:**

**1. Crypto investments:** Scammers befriend you on social media or through "wrong number" texts. They guide you to download a fake crypto app and then steal your "investment".
**2. Crypto ATM deposits:** Someone posing as a government official warns you about the security of your account and advises you to deposit cash into a Crypto ATM to "keep your money safe". Instead, you are actually depositing money in their account.

**Red flags:** Unexpected contact, promises of big investment returns, or threats about your account security.

**Remember, no reputable organization will ask you to make cash deposits into a Crypto ATM.** You may not get your money back.

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 1/1 | -$429.58 |
| Deposits/Credits | 240,861.69 |
| Withdrawals/Debits | - 240,310.94 |
| **Ending balance on 1/31** | **$121.17** |

Account number: [redacted]**6304 (primary account)**

**HEALTHMED CLINICAL CENTER INC**

*Florida account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 063107513

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

## Transaction history

| *Date* | *Check Number* | *Description* | *Deposits/ Credits* | *Withdrawals/ Debits* | *Ending daily balance* |
|---|---|---|---|---|---|
| 1/2 | | Fcso, Inc. Hcclaimpmt 251230 1083461891 TRN*1*818293816*1593514335~ | 212,415.63 | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | | [redacted] | |
| 1/2 | | Online Transfer to Diaz J Way2Save Savings xxxxxx1133 Ref #Ib0Wb3Pqth on 01/01/26 | | 211,851.17 | |
| [redacted] | | [redacted] | | [redacted] | [redacted] |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | [redacted] | | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |
| [redacted] | | [redacted] | | [redacted] | |

Gmail

Jesdit Diaz <jesdit18@gmail.com>

**Global Settlement - Jesdit Diaz/26-11729**

**Timothy Kingcade** <tsk@miamibankruptcy.com>
To: "MBakst@lippes.com" <MBakst@lippes.com>

Michael,

I am not in this case just yet, but willing to try to reach a global settlement with the trustee.

Is this something you're interested in? I see the 727 action and want to make sure this isn't too far gone

**Timothy S. Kingcade, Esq.**
Kingcade & Garcia, P.A.
Kingcade Building
1370 Coral Way
Miami, FL 33145-2960
Telephone: 305-285-9100
www.miamibankruptcy.com
Click Here to Fill Out Our Client Intake Form

Avvo
Clients' Choice
Award 2026
Timothy S. Kingcade

Top Contributor
Award 2026
Timothy S. Kingcade
Avvo

AMERICA'S MOST HONORED
TOP
1
PERCENT
LAWYERS

Exp
Be
Law

Martindale-Hubbell®
AV PREEMINENT®
Peer Rated for Highest level of Professional Excellence
2026

Avvo
10.0
Superb
Top Attorney
Bankruptcy

TOP 10
MIAMI
BANKRUPTCY ATTORNEY
2026
TrustAnalytica

Martindale-Hubbell®
CLIENT CHAMPION
PLATINUM / 2026

Gmail

Jesdit Diaz <jesdit18@gmail.com>

**Global Settlement - Jesdit Diaz/26-11729**

**Jesdit Diaz** <jesdit18@gmail.com>
To: Timothy Kingcade <tsk@miamibankruptcy.com>

Dear Mr. Kingcade,

I wanted to follow up and see if you were able to speak with Mr. Bakst.

I received a 13-page letter in the mail yesterday regarding an upcoming hearing. From what I understand, Marcia Dunn and Mr. Bakst are claiming that I did not comply with their requests for as my attorney.

Regarding the June 10th hearing, I was unable to arrive on time, which is why the judge granted their requests. Since then, I have consulted with over five lawyers. One informed me I had unt Mr. Bakst stated he gave me until June 23rd. On June 24th, I emailed Mr. Bakst screenshots of my conversations with Mrs. Dayami, the contract for Dr. Perez, and explained that Dr. Iglesias unsuccessful.

The claim that I have not been complying is incorrect. I have cooperated with all of their requests, including contacting my car insurance provider to add Marcia Dunn to the policy.

I now have a hearing scheduled for September 15th, which includes the adversary case. Additionally, Healthmed Clinical Center Inc. has been closed since May, and the office space was turr

Please let me know if you will be able to represent me. I am overwhelmed by these documents and would greatly appreciate your help.

Best regards,

J. Diaz

On Mon, Jul 20, 2026 at 3:13 PM Timothy Kingcade <tsk@miamibankruptcy.com> wrote:

> Michael,
>
> I am not in this case just yet, but willing to try to reach a global settlement with the trustee.
>
> Is this something you're interested in? I see the 727 action and want to make sure this isn't too far gor
>
> **Timothy S. Kingcade, Esq.**
>
> Kingcade & Garcia, P.A.
>
> Kingcade Building
>
> 1370 Coral Way
>
> Miami, FL 33145-2960
>
> Telephone: 305-285-9100
>
> www.miamibankruptcy.com
>
> Click Here to Fill Out Our Client Intake Form

Avvo Clients' Choice Award 2026
Timothy S. Kingcade

Top Contributor Award 2026
Timothy S. Kingcade
Avvo

America's Most Honored Lawyers
Top 1 Percent

Martindale-Hubbell®
AV Preeminent®
Peer Rated for Highest level of Professional Excellence
2026

Avvo 10.0 Superb
Top Attorney Bankruptcy

Top 10
Miami
Bankruptcy Attorney
2026
Trustanalytica

Martindale-Hubbell®
Client Champion
Platinum / 2026

Gmail Jesdit Diaz <jesdit18@gmail.com>

**Global Settlement - Jesdit Diaz/26-11729**

**Timothy Kingcade** <tsk@miamibankruptcy.com>
To: "Michael R. Bakst" <MBakst@lippes.com>

Michael,

Can you please call me on my cell phone today?

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

www.miamibankruptcy.com

Click Here to Fill Out Our Client Intake Form

Avvo Clients' Choice Award 2026 Timothy S. Kingcade

Top Contributor Award 2026 Timothy S. Kingcade Avvo

America's Most Honored Lawyers TOP 1 PERCENT

Exp Be Law

Martindale-Hubbell® AV PREEMINENT® Peer Rated for Highest level of Professional Excellence 2026

Avvo 10.0 Superb Top Attorney Bankruptcy

TOP 10 MIAMI BANKRUPTCY ATTORNEY 2026 TrustAnalytica

Martindale-Hubbell® CLIENT CHAMPION PLATINUM / 2026

**From:** Michael R. Bakst <MBakst@lippes.com>
**Sent:** Monday, July 20, 2026 4:29 PM
**To:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Subject:** RE: Global Settlement - Jesdit Diaz/26-11729

I have put it in my calendar to call you during a break in mediation

**Michael R. Bakst**

Partner

LippesMathias LLP ATTORNEYS AT LAW

4420 Beacon Circle

West Palm Beach, Florida 33407

ph: 561.842.3000 ext. 1577 | fx: 561.842.3626

MBakst@lippes.com | lippes.com

LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only t
distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify
copies in your possession.

**From:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Sent:** Monday, July 20, 2026 3:37 PM
**To:** Michael R. Bakst <MBakst@lippes.com>
**Subject:** RE: Global Settlement - Jesdit Diaz/26-11729

Call me on my cell today or tomorrow. 305-799-1370.

I am out W-F for a wedding in Colorado.

Best to speak before I depart so that I can arrange for retainage if we can settle the case.

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

https://link.edgepilot.com/x/hfH6k4O58UJfEOilyOGPEuw?u=http://www.miamibankruptcy.com/

Click Here to Fill Out Our Client Intake Form




**From:** Michael R. Bakst <MBakst@lippes.com>
**Sent:** Monday, July 20, 2026 3:29 PM
**To:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Subject:** RE: Global Settlement - Jesdit Diaz/26-11729

I am getting on a conference call in 1 minute. I have an all day mediation tomorrow, but we will have breaks. Is there a time tomorrow when you are open?

**Michael R. Bakst**

Partner

LippesMathias LLP
ATTORNEYS AT LAW

4420 Beacon Circle

West Palm Beach, Florida 33407

ph: 561.842.3000 ext. 1577 | fx: 561.842.3626

MBakst@lippes.com | lippes.com

LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only t distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify copies in your possession.

**From:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Sent:** Monday, July 20, 2026 3:25 PM
**To:** Michael R. Bakst <MBakst@lippes.com>
**Subject:** RE: Global Settlement - Jesdit Diaz/26-11729

Is there a time we can talk?

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

https://link.edgepilot.com/x/wxp1JJQx0dtXqmuYfWyc9ew?u=http://www.miamibankruptcy.com/

Click Here to Fill Out Our Client Intake Form

Avvo Clients' Choice Award 2026 Timothy S. Kingcade

Top Contributor Award 2026 Timothy S. Kingcade Avvo

America's Most Honored Lawyers TOP 1 PERCENT

Martindale-Hubbell® AV PREEMINENT® Peer Rated for Highest level of Professional Excellence 2026

Avvo 10.0 Superb Top Attorney Bankruptcy

TOP 10 MIAMI BANKRUPTCY ATTORNEY 2026 TrustAnalytica

Martindale-Hubbell® CLIENT CHAMPION PLATINUM / 2026

**From:** Michael R. Bakst <MBakst@lippes.com>
**Sent:** Monday, July 20, 2026 3:23 PM
**To:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Subject:** RE: Global Settlement - Jesdit Diaz/26-11729

Hello Tim. It is pretty far gone. She really has gone way above and beyond with hiding assets here. The adversaries that have been filed seek $180,000.00 (fraudulent transfer) and $11,000.0
she has been ordered to turn over.

If she can get back the money from Wellness ARE USA, Inc. and get turnover the $22,688.07, then maybe there is something to discuss (we can deal with the preference), but beyond that, sł

**Michael R. Bakst**

Partner

LippesMathias LLP
ATTORNEYS AT LAW

4420 Beacon Circle

West Palm Beach, Florida 33407

ph: 561.842.3000 ext. 1577 | fx: 561.842.3626

MBakst@lippes.com | lippes.com

LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only t
distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify
copies in your possession.

**From:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Sent:** Monday, July 20, 2026 3:13 PM
**To:** Michael R. Bakst <MBakst@lippes.com>
**Subject:** Global Settlement - Jesdit Diaz/26-11729

Michael,

I am not in this case just yet, but willing to try to reach a global settlement with the trustee.

Is this something you're interested in? I see the 727 action and want to make sure this isn't too far gone

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

https://link.edgepilot.com/x/BO0Jh2tzW_qwNbBdRCeAw5c?u=http://www.miamibankruptcy.com/

Click Here to Fill Out Our Client Intake Form

Avvo Clients' Choice Award 2026 Timothy S. Kingcade

Top Contributor Award 2026 Timothy S. Kingcade Avvo

America's Most Honored Lawyers TOP 1 PERCENT

Exp

Martindale-Hubbell® AV PREEMINENT® Peer Rated for Highest level of Professional Excellence 2026

Avvo 10.0 Superb Top Attorney Bankruptcy

TOP 10 MIAMI BANKRUPTCY ATTORNEY 2026 TrustAnalytica

Martindale-Hubbell® CLIENT CHAMPION PLATINUM / 2026

Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed

[Quoted text hidden]

Gmail Jesdit Diaz <jesdit18@gmail.com>

## Global Settlement - Jesdit Diaz/26-11729

**Jesdit Diaz** <jesdit18@gmail.com> Tue, Jul 28, 2026 at 2:32 AM
To: Timothy Kingcade <tsk@miamibankruptcy.com>

Good morning Mr. Kingcade,

Wanted to follow and see if you spoke with Mr. Bask

Please advise

Best regards,

J. Diaz

Sent from my iPhone

> On Jul 23, 2026, at 8:06 AM, Timothy Kingcade <tsk@miamibankruptcy.com> wrote:
>
> I am waiting for him to call me. He was in a mediation.

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

www.miamibankruptcy.com

Click Here to Fill Out Our Client Intake Form

<image001.jpg>

[Quoted text hidden]

> [Quoted text hidden]
>
> <image001.jpg>

[Quoted text hidden]

Gmail Jesdit Diaz <jesdit18@gmail.com>

## Global Settlement - Jesdit Diaz/26-11729

**Jesdit Diaz** <jesdit18@gmail.com> Thu, Aug 6, 2026 at 11:41 PM
To: Timothy Kingcade <tsk@miamibankruptcy.com>

Good evening Mr. Kingcade,

I understand, and I truly appreciate your direct feedback. As I mentioned in my previous email, I respectfully ask that you speak with Mr. Bask to see if we can settle this debt for $10,000–$11,000, which is the absolute maximum I can commit to. I can pay this amount back over a 12-month period.

This is genuinely the best I can do at this time, and I am trying to resolve this matter responsibly and in good faith. I hope the trustee will consider this proposal so we can move forward.

Thank you for your understanding

Best regards,

J. Diaz
[Quoted text hidden]

Gmail

Jesdit Diaz <jesdit18@gmail.com>

**Global Settlement - Jesdit Diaz/26-11729**

**Timothy Kingcade** <tsk@miamibankruptcy.com>
To: Jesdit Diaz <jesdit18@gmail.com>

He rejected $20,000.

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

www.miamibankruptcy.com

Click Here to Fill Out Our Client Intake Form

**From:** Jesdit Diaz <jesdit18@gmail.com>
**Sent:** Thursday, August 6, 2026 11:41 PM
**To:** Timothy Kingcade <tsk@miamibankruptcy.com>
**Subject:** Re: Global Settlement - Jesdit Diaz/26-11729

Good evening Mr. Kingcade,

I understand, and I truly appreciate your direct feedback. As I mentioned in my previous email, I respectfully ask that you speak with Mr. Bask to see if we can settle this debt for $10,000–$11, 12-month period.

This is genuinely the best I can do at this time, and I am trying to resolve this matter responsibly and in good faith. I hope the trustee will consider this proposal so we can move forward.

Thank you for your understanding

Best regards,

J. Diaz

On Thu, Aug 6, 2026 at 11:46 AM Timothy Kingcade <tsk@miamibankruptcy.com> wrote:

> I hear what you're saying, but the trustee wants money, not apologies or explanations.'
>
> **Timothy S. Kingcade, Esq.**
>
> Kingcade & Garcia, P.A.
>
> Kingcade Building
>
> 1370 Coral Way
>
> Miami, FL 33145-2960
>
> Telephone: 305-285-9100
>
> https://link.edgepilot.com/x/Aa_YKd-x_QVNS5_Byc4y7-c?u=http://www.miamibankruptcy.com/
>
> [Quoted text hidden]

[Quoted text hidden]

Gmail

Jesdit Diaz <jesdit18@gmail.com>

## Global Settlement - Jesdit Diaz/26-11729

**Jesdit Diaz** <jesdit18@gmail.com> Fri, Aug 7, 2026 at 4:37 PM
To: Timothy Kingcade <tsk@miamibankruptcy.com>

Hi Mr. kingcade

WOW!!! Speechless!!! Can you please let me know what amount the trustee is requesting now?

As I mentioned before, I do not have the financial ability to pay an amount that is beyond what I can realistically afford. I am currently working for $17 per hour, and my income does not allow me to commit to a large settlement payment. I do not want to agree to an amount that I know I cannot realistically pay and then end up defaulting on the agreement.

At this point, what would you recommend as the best option for me? If the trustee will not accept an amount that I can realistically afford, I would also like to understand what other options I may have, including whether converting to Chapter 13 would be possible or advisable in my situation.

Please let me know what you recommend and what amount the trustee is now asking for.

Thank you

J. Diaz
[Quoted text hidden]

Gmail **Jesdit Diaz <jesdit18@gmail.com>**

---

## Global Settlement - Jesdit Diaz/26-11729

---

**Jesdit Diaz** <jesdit18@gmail.com> Mon, Aug 10, 2026 at 12:50 PM
To: Timothy Kingcade <tsk@miamibankruptcy.com>
Cc: Tina Polimeni <tina@miamibankruptcy.com>

Hi Mr. Kingcade,

I didn’t call for that and I know his rejecting I call to see if what are options or we if can meet to see what I’m going to do since his rejecting 20,000.

And I did tell her we have been emailing back and forth.

Thank you

Sent from my iPhone

> On Aug 10, 2026, at 12:46 PM, Timothy Kingcade <tsk@miamibankruptcy.com> wrote:
>
> [Quoted text hidden]

Gmail

Jesdit Diaz <jesdit18@gmail.com>

**Global Settlement - Jesdit Diaz/26-11729**

**Timothy Kingcade** <tsk@miamibankruptcy.com>
To: Jesdit Diaz <jesdit18@gmail.com>
Cc: Tina Polimeni <tina@miamibankruptcy.com>

I do not want to litigate, nor convert your case to Chapter 13.

**Timothy S. Kingcade, Esq.**

Kingcade & Garcia, P.A.

Kingcade Building

1370 Coral Way

Miami, FL 33145-2960

Telephone: 305-285-9100

www.miamibankruptcy.com

Click Here to Fill Out Our Client Intake Form